Case 4:22-cv-02757   Document 23   Filed on 01/25/23 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
January 25, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FADEL MARIO TANKOANO, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. H-22-2757 |
| § | |
| U.S. CITIZENSHIP AND IMMIGRATION § | |
| SERVICES, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

This is a sad case. The plaintiff, Fadel Mario Tankoano, was born in this country. He grew up believing that he was a citizen. The government told him as much when it issued him a passport and accepted five years of his young life as a United States Army volunteer, which is limited to citizens. After all this, the government refused to renew his passport, telling him that he was not a citizen because his parents were here as diplomats when he was born in New York City. Tankoano sued United States Citizenship and Immigration Services ("USCIS"), the Department of State, and various officials, invoking various statutes to establish his citizenship. The government moved for partial dismissal, asserting limitations, lack of subject matter jurisdiction, and failure to state a claim against all defendants except USCIS.

Based on the pleadings, the motions, the briefs, the record, and the applicable law, the court grants the dismissal of Tankoano's claims under 8 U.S.C. § 1503(a) and 28 U.S.C. § 2201 because Tankoano did not file his case within five years of the final administrative decision denying his passport application. Tankoano's attempts under the Administrative Procedures Act, 5 U.S.C. § 701; the Declaratory Judgment Act, 28 U.S.C. § 2201; the All Writs Act, 28 U.S.C. § 1651; and

for a writ of mandamus, 28 U.S.C. § 1361, cannot overcome the agency's determination that he is not a citizen. The parties agreed to dismiss the claims against the individual defendant, Antony Blinken, and against the Department of State. The remaining defendant is USCIS, and the remaining claim relates to Tankoano's application for naturalization pending before USCIS and governed by 8 U.S.C. § 1447(b).

The reasons for these rulings are explained below.

I.      **Background.**

Tankoano was born in New York City in April 1999. His father, Boubacar Tankoano, was then a diplomat at the Permanent Mission of Niger to the United Nations, with diplomatic agent-level immunity under the United Nations Headquarters Agreement, T.I.A.S. No. 1676, and the Vienna Convention on Diplomatic Relations.

In March 2001, Tankoano's parents executed a U.S. passport application for him, supported by his New York City birth certificate. Not quite three weeks later, the Department of State issued Tankoano a passport. (Docket Entry No. 11-6). That passport expired in March 2006. In August 2015, when Tankoano was 16 years old, he executed a second application for a U.S. passport at the U.S. Embassy in Niamey, Niger, accompanied by his mother and with the written consent of his father. (Docket Entry No. 11-3). After verifying that Tankoano's father had diplomatic agent-level privileges and immunities when Tankoano was born, the Department of State denied his application. The denial notification letter explained:

> As a Counselor at the Permanent Mission of Niger to the United Nations from September 14, 1997 to July 16, 2004, Mr. Boubacar Tankoano and accredited family members forming a part of his household, including [his] child, Fadel Mario Tankoano, were accorded full diplomatic immunity under the *United Nations Headquarters Agreement*, T.I.A.S. No. 1676 and the *Vienna Convention on Diplomatic Relations*. As such, Fadel Mario Tankoano was born not subject to the jurisdiction of the United States of American and did not acquire U.S. citizenship at birth pursuant to the Fourteenth Amendment to the Constitution.

(Docket Entry No. 11-4).

In May 2017, after reentering the United States, Tankoano filed a third application for a passport in Houston, Texas. (Docket Entry No. 11-7). Tankoano falsely stated that he was born in Houston, Texas (rather than in New York City), and that he had never applied for, or been issued, a U.S. passport. (*Id.*). In September 2017, after reverifying that Tankoano's birth certificate stated he was born in New York City and that he had diplomatic agent-level privileges and immunities at the time of his birth, the Department of State denied the application for a second time. The Department again stated that Tankoano had not acquired U.S. citizenship at birth. (Docket Entry No. 11-8).

After having received two notices from the Department of State informing Tankoano that he was not a U.S. citizen by birth, he enlisted in the U.S. Armed Forces in April 2018, identifying himself, in apparent good faith, as a U.S. citizen by virtue of birth in the United States. The Army did its own background check and agreed that he was a citizen; it accepted five years of his voluntary service (which required him to be a citizen).

Tankoano executed a fourth application for a U.S. passport at the U.S. Embassy in Seoul, South Korea, in July 2019. (Docket Entry No. 11-9). In March 2020, after verifying for a third time that Tankoano had had diplomatic agent-level privileges and immunities at the time of his birth in New York City, the Department of State denied the application for a third time, again explaining Tankoano did not acquire U.S. citizenship at birth. (Docket Entry No. 11-10). Tankoano then applied for naturalization based on his military service under 8 U.S.C. § 1440, by filing an N-400 with the USCIS in May 2020. In June 2022, the USCIS issued a Notice of Intent to Deny. In August 2022, Tankoano filed this lawsuit, and in September 2022, he responded to

3

the Notice of Intent to Deny. This motion for partial dismissal followed. The court grants the motion, as set out below.

## II. The Legal Standards

A party may move for dismissal based on the lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(1); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). "In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). The court accepts all factual allegations as true. *Id.* When determining issues of subject matter jurisdiction, the courts "may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment." *Alabama ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973).

## III. Analysis

### A. The Statute of Limitations

The government moves to dismiss Count I of the complaint under Rule 12(b)(1) because Tankoano filed the complaint after the five-year limitations period under 8 U.S.C. § 1503(a) expired. *See Cambranis v. Blinken*, 994 F.3d 457, 463 (5th Cir. 2021). Under § 1503(a), an individual who claims a denial of a right or privilege of citizenship on the ground that he is not a national of the United States may seek a declaration of citizenship but must do so "within five years *after the final administrative denial* of the right or privilege." *Garcia v. Freeman*, 542 F. App'x 354, 355 (5th Cir. 2013) (per curiam) (quoting reference omitted). Denying a passport

application is a denial of a right or privilege of citizenship. *See Vazquez v. Blinken*, No. 21-40062, 2021 WL 5985059, at *2 (5th Cir. Dec. 16, 2021) (per curiam) (holding that five-year limitations clock under 8 U.S.C. § 1503(a) begins to run when a passport is denied and that courts lack jurisdiction after five years have elapsed).

The "limitations period begins to run after the first final administrative denial of the claimed right or privilege, and the limitations period is not reset 'by means of a follow-on denial.'" *Cambranis*, 994 F.3d at 463 (quoting *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019)). "[W]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity," and "the terms of [the United States'] waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986) (quoting reference omitted). Courts "constru[e] ambiguities in favor of immunity." *United States v. Williams*, 514 U.S. 527, 531 (1995).

The Department of State and Secretary of State Antony Blinken first denied Tankoano's passport application in August 2015. A claim under 8 U.S.C. § 1503(a) had to be filed within five years of that denial. Tankoano filed his complaint in August 2022, almost two years after the statute of limitations ended. This lawsuit is time-barred under 8 U.S.C. § 1503(a) unless there is a basis for extending tolling or limitations.

The Declaratory Judgment Act does not independently confer jurisdiction. *See Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019) ("A claim under the Declaratory Judgment Act does not confer federal question jurisdiction under 28 U.S.C. § 1331."). "The operation of the Declaratory Judgment Act is procedural only." *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 938 (5th Cir. 2012) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). Nor does the Fourteenth Amendment's

Citizenship Clause help—it merely defines citizenship and the accompanying governmental limits, not federal court jurisdiction. *See Thomas v. Lynch*, 796 F.3d 535, 538–40 (5th Cir. 2015).

Federal courts have routinely reviewed challenges to the denial of benefits based on noncitizenship under 8 U.S.C. § 1503. This is the proper vehicle to review the denial of Tankoano's citizenship claim. *See, e.g.*, *Cambranis*, 994 F.3d at 463 ("Congress intended § 1503(a) to be the exclusive remedy for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national.").

The fact that Congress has provided a cause of action under 8 U.S.C. § 1503 precludes finding an implied private right of action under the Constitution. *See Jud. Watch, Inc. v. Rossotti*, 317 F.3d 401, 413 (4th Cir. 2003) ("[I]t would be inappropriate . . . to supplement [the] regulatory scheme with a new judicial remedy," when Congress had already provided for other "meaningful" remedies. (quoting *Schweiker v Chilicky*, 487 U.S. 412, 423 (1988)). Because the statute of limitations has run for a § 1503(a) claim, and because the Declaratory Judgment Act and Fourteenth Amendment do not provide a separate basis for jurisdiction, the court lacks jurisdiction over Tankoano's claim for an order declaring that he was subject to the jurisdiction of the United States at birth and is therefore a United States citizen by birth.

Although Tankoano's complaint refers to the third denial of his passport application in March 2020, the first denial of his passport was a final agency action sufficient to invoke the court's jurisdiction under 8 U.S.C. § 1503(a). Tankoano had applied for a passport on two prior occasions. The Department of State had denied each application. The "limitations period begins to run after the first final administrative denial of the claimed right or privilege" and is not reset "by means of a follow-on denial," *Cambranis*, 994 F.3d at 463 (quoting *Gonzalez*, 926 F.3d at

6

188), particularly when, as here, the denials are all based on the same ground, *see Villarreal Salinas v. Limon*, 549 F. Supp. 3d 624 (S.D. Tex. 2021).

Tankoano executed his second passport application at the Nigerian Embassy in 2015. The Department denied the application that same day, after determining that Tankoano had not established a claim to U.S. citizenship and that his 2001 passport had been issued in error. The materials Tankoano submitted with his third and fourth passport applications in 2017 and 2019 are substantially similar. They resulted in denials based on the same reason: the "[p]laintiff was born not subject to the jurisdiction of the United States of America and did not acquire U.S. citizenship at birth pursuant to the Fourteenth Amendment to the Constitution." (Docket Entry No. 11).

While Tankoano submitted different identity documents with his 2017 and 2019 passport applications, the evidence of citizenship that he presented in those applications—his New York City birth certificate—was what he submitted in 2015. The third (2017) and fourth (2019) applications were similar to the application denied in 2015. Neither of the later applications restarted the § 1503(a) limitations period. *Vasquez v. Pompeo*, 467 F. Supp. 3d 466, 473 (S.D. Tex. 2020); *Villarreal Salinas*, 549 F. Supp. 3d at 630.

Because "the first final administrative denial" of Tankoano's citizenship application was in August 2015, his claim is barred by the five-year limitations period under § 1503(a). *See Cambranis*, 994 F.3d at 463; *Gonzalez*, 926 F.3d at 189. Section 1503(a) cannot serve as a basis for declaratory relief. Count 1 is dismissed under Rule 12(b)(1).

B. **The APA Claims**

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. If, as here, the plaintiff is not seeking money damages,

7

the APA waives the government's sovereign immunity and allows a plaintiff to sue in federal court to challenge the agency action. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014).

Section 702 states that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. "According to the Supreme Court, '[t]hat provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes.'" *Cambranis*, 994 F.3d at 463 (quoting *Match-E-Be-Nash-She Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012)).

The court lacks jurisdiction under the APA because § 1503(a) provides an adequate remedy. *See id.* ("Therefore, we hold that Congress intended § 1503(a) to be the exclusive remedy for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national."). Under § 702, the United States may assert its sovereign immunity against APA claim because the § 1503(a) statute of limitations has run and precludes relief.

The APA claim is also precluded because § 1503(a) and § 1447(b) provide an adequate remedy for Tankoano's claims. *See Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 712 (5th Cir. 2010) (affirming the dismissal of an APA claim for lack of subject matter jurisdiction because the plaintiff had an adequate remedy). "In other words, a plaintiff may sue under the APA only where there are no other judicial remedies available." *Cavazos v. Kerry*, No. 3:15-cv-0661, 2016 WL 4126142, at *4 (N.D. Tex. Aug. 3, 2016). When a plaintiff has other adequate remedies, dismissal of an APA claim under Rule 12(b)(1) is appropriate. *Trader Props., LLC v. United States*, No. 1:14-cv-00254, 2015 WL 1208983, at *1–2 (S.D. Tex. Mar. 16, 2015). "This

determination appears to hinge on whether the alternative statutory remedies are 'adequate' to redress the injury alleged, although the alternative need not be 'more effective' than APA review." *Sanchez v. Clinton*, No. 4:11-cv-2084, 2012 WL 208565, at *4 (S.D. Tex. Jan. 24, 2012), *aff'd*, 648 F. App'x 386 (5th Cir. 2015).

Tankoano's APA claim is jurisdictionally barred because §§ 1503(a) and 1447(b) provide adequate remedies at law. Section 1503(a) is an adequate remedy to challenge a denial of rights or privileges as a U.S. national. *See Hinojosa v. Horn*, 896 F.3d 305, 312–14 (5th Cir. 2018); *Flores v. Pompeo*, 936 F.3d 273, 277 (5th Cir. 2019) (Section 704 precludes claims under the APA challenging a denial of a passport because 8 U.S.C. § 1503(a) is an adequate remedy); *see, e.g.*, *Chavarria v. Pompeo*, 387 F. Supp. 3d 753, 760 (S.D. Tex. 2019); *Villarreal v. Horn*, 203 F. Supp. 3d 765, 773 (S.D. Tex. 2016) ("This Court and other courts have repeatedly dismissed APA claims challenging the denial of a passport application or a passport revocation on grounds that the holder is not a U.S. national . . . ."); *Tavera v Harley-Bell,* No. 09-cv-0299, 2010 WL 1308800, at *3 (S.D. Tex. Mar. 31, 2010) ("8 U.S.C. § 1503(a) does indeed provide an adequate remedy to address Plaintiff's injuries such that review under the APA is precluded."). To the extent that Tankoano uses the APA to seek declaratory relief that he is a U.S. citizen or to challenge the denial of his passport, the court lacks jurisdiction because § 1503(a) provides an adequate alternative remedy.

The fact that the statute of limitations for a § 1503(a) claim has run does not allow APA review. The Fifth Circuit has held that § 1503(a) is an adequate remedy, even if the plaintiff did not timely invoke that remedy. In *Martinez v. Pompeo*, 977 F.3d 457 (5th Cir. 2020), the Fifth Circuit held that § 1503(a) is an adequate remedy even if the five-year statute of limitations has expired. *Id.* at 460. "A legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived

9

themselves of the opportunity to pursue that remedy." *Id*. Section 1503(a) is an "'adequate and available remedy' despite the limitation problem," precluding an APA claim for relief. *Id.* at 549.

The court similarly lacks jurisdiction over the APA claim because it seeks to compel application of Tankoano's naturalization application. Under § 1447(b), "[i]f there is a failure to make a determination [on an applicant's application for naturalization] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter. . . ." 8 U.S.C. § 1447(b); *see also Walji v. Gonzales*, 500 F.3d 432, 434 (5th Cir. 2007) ("If the CIS does not issue a decision within 120 days of the examination, applicants may seek judicial relief under 8 U.S.C. § 1447(b)."). Tankoano acknowledges this remedy by asserting a § 1447(b) claim in his complaint. (Docket Entry No. 1, ¶¶ 57–60). He has an adequate remedy to challenge any alleged delay in the adjudication of his naturalization application, precluding review under the APA. *Cf., e.g.*, *Ayyub v. Blakeway*, No. 10-cv-149, 2010 WL 3221700, at *4 n.16 (W.D. Tex. Aug. 13, 2010); *Barrera v. Limon*, No. 1:17-cv-00245, 2018 WL 11450364, at *2 n.2 (S.D. Tex. June 8, 2018). The APA claim is dismissed for lack of subject matter jurisdiction.

### C. Mandamus

Under the Mandamus Act, a district court may "compel an officer or employee of the United States or any agent thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is a "drastic and extraordinary remedy" that is "reserved for really extraordinary causes." *Nelson v. Clinton*, No. 4:10-cv-0058, 2010 WL 5342822, at *10 (S.D. Tex. Dec. 21, 2010) (quoting *Cheney v. U.S. Dist. Ct. D.C.*, 542 U.S. 367, 380 (2004)); *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969) ("It is hornbook law that mandamus is an extraordinary remedy

which should be utilized only in the clearest and most compelling of cases."). Mandamus relief is appropriate only when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available. *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980); *Offiiong v. Holder*, 864 F. Supp. 2d 611, 627 (S.D. Tex. 2012) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)).

Tankoano's complaint pleads an alternative remedy under § 1447(b). Because an adequate alternative remedy exists to compel adjudication of Tankoano's pending naturalization application means that he has failed to state a claim for mandamus to achieve the same result. *See Oniwon v. U.S. Citizenship & Immigr. Servs.*, No. 4:19-cv-3519, 2020 WL 1940879, at *5 (S.D. Tex. Apr. 6, 2020) ("While the APA and the Mandamus Act might be coextensive, 'mandamus is available only if the plaintiff has no other remedy.'" (quoting reference omitted)), *report and recommendation adopted*, 2020 WL 1939686 (S.D. Tex. Apr. 22, 2020). The mandamus claim is dismissed for failure to state a claim.

### D. The Claims Against the Department of State and Secretary of State

The remaining claims, relating to Tankoano's application for naturalization pending before USCIS, are governed by 8 U.S.C. § 1447(b). (Docket Entry No. 1, ¶¶ 8, 25–29, 41–54, 57–66). Those claims are against the USCIS, not the Department of State or The Secretary of State, Antony Blinken. The USCIS is responsible for the adjudication of naturalization applications and is the appropriate defendant in a § 1447(b) action. *See Barrera*, 2018 WL 11450364, at *2 ("The first step for an individual seeking naturalization is to submit an application to the Attorney General through the United States Citizenship and Immigration Services . . . . The applicant may apply for *de novo* review if USCIS fails to render a decision on the application . . . ." (citing 8 U.S.C. §§ 1445(a) and 1447(b))). The Department of State and the Secretary of State are dismissed, with

the parties' agreement. A final judgment in their favor is appropriate because "there is no just reason for delay" in entering judgment as to them. The remaining claims proceed against the USCIS; its Director, Ur M. Jaddou; and the Acting Houston Field Office Director.

## IV. Conclusion

The motion for partial dismissal, (Docket Entry No. 11), is granted. The court will hold an initial conference to set a schedule for the remainder of this case on **February 6, 2023, at 5:15 p.m.** by Zoom. A Zoom link will be sent separately.

SIGNED on January 25, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge